1

2

3
                    UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION

4        UNITED STATES OF AMERICA,

5               PLAINTIFF,              CASE NO.  CR-05-00215-EJD

6           VS.                        SAN JOSE, CALIFORNIA

7        ERIC LIGHTER,                 JANUARY 7, 2016

8               DEFENDANT.             PAGES 1 - 28

9

10

11                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE

12

13                   A-P-P-E-A-R-A-N-C-E-S

14

15      FOR THE PLAINTIFF:    U.S. DEPARTMENT OF JUSTICE
                              BY:   CHARLES O'REILLY
                                    KATHERINE WONG
16                            601 D STREET NW
                              WASHINGTON, DC 20004

17

18      FOR THE DEFENDANT:    LAW OFFICES OF JAY ADAM RORTY
                              BY:   JAY RORTY
19                            835 CEDAR STREET
                              SANTA CRUZ, CALIFORNIA 95060

20

        U.S. PRETRIAL SERVICE: ALLEN LEW
21      U.S. MARSHAL SERVICE:  MARY ANDERSON

22       OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                     CERTIFICATE NUMBER 8074

23

24         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.

25

```
1      SAN JOSE, CALIFORNIA                    JANUARY 7, 2016

2
                          P R O C E E D I N G S
3

4          (COURT CONVENED AT 10:28 A.M.)

5                  THE COURT:  GOOD MORNING.

6                  THE CLERK:  CALLING CASE NUMBER 05-215, UNITED

7      STATES VERSUS ERIC LIGHTER.

8                  MR. O'REILLY:  CHARLES O'REILLY AND KATHERINE WONG

9      FOR THE UNITED STATES.

10                 THE COURT:  GOOD MORNING.  NICE TO SEE YOU AGAIN.

11                 MR. O'REILLY:  GOOD MORNING AGAIN.

12                 MR. RORTY:  GOOD MORNING, YOUR HONOR.  JAY RORTY

13     WITH MR. LIGHTER WHO IS PRESENT IN CUSTODY.

14                 THE COURT:  THANK YOU.  GOOD MORNING.

15         GOOD MORNING, MR. LIGHTER.

16                 THE DEFENDANT:  GOOD MORNING.

17                 THE COURT:  THIS MATTER APPEARS ON CALENDAR PURSUANT

18     TO SOME PLEADINGS FILED BY THE PARTIES.

19         LET ME JUST SEE AND LET ME INDICATE THAT I HAVE RECEIVED

20     AND READ DOCUMENT 543, WHICH IS THE UNITED STATES MOTION

21     REGARDING POST-SECTION 4241 PROCEEDINGS; I HAVE ALSO RECEIVED

22     DOCUMENT NUMBER 544, WHICH IS THE GOVERNMENT'S OPPOSITION TO

23     THE GOVERNMENT'S MOTION REGARDING POST-SECTION 4241; AND I HAVE

24     ALSO RECEIVED DOCUMENT 547, WHICH IS THE UNITED STATES REPLY TO

25     THE DEFENDANT'S OPPOSITION.
```

1      I HAVE ALSO, OF COURSE, READ AND REVIEWED THE REPORT FROM

2  THE DEPARTMENT OF JUSTICE, THE FEDERAL MEDICAL CENTER AT

3  BUTNER.  IT'S DATED NOVEMBER 18, 2015.  AND I THINK IT'S

4  11 PAGES.  IT'S SIGNED BY TRACY O'CONNOR PENNUTO,

5  P-E-N-N-U-T-O, AND ANGELA WALDEN WEAVER, PH.D., BOTH FROM THE

6  BUTNER FACILITY.

7      I RECEIVED TODAY, I DON'T KNOW IF IT WAS FILED, BUT THIS

8  MORNING A DOCUMENT FILED BY MR. RORTY ENTITLED NOTICE OF MOTION

9  AND MOTION FOR ORDER DIRECTING MARSHALS PURSUANT TO 18 U.S.C.

10  4282.

11      DO YOU HAVE THAT MR. O'REILLY?

12          MR. O'REILLY:  YES, YOUR HONOR.  MS. GARCIA WAS KIND

13  ENOUGH TO GET ME A COPY.

14          THE COURT:  THANK YOU.  SO THOSE ARE THE DOCUMENTS

15  I'VE READ AND REVIEWED PURSUANT TO TODAY'S HEARINGS.

16      IS THERE ANYTHING ELSE THAT I MISSED OR ANY OTHER

17  DOCUMENTS THAT COUNSEL HAVE FILED AND WANT TO DRAW MY ATTENTION

18  TO.

19          MR. O'REILLY:  NOT FROM THE GOVERNMENT.

20          MR. RORTY:  DID THE COURT INDICATE THAT IT RECEIVED

21  THE UNITED STATES REPLY TO THE DEFENDANT'S OPPOSITION TO THE

22  THREE SUBSTANTIVE PLEADINGS, THE GOVERNMENT'S INITIAL PLEADINGS

23  AND --

24          THE COURT:  I'VE RECEIVED AND READ 543 AND 547.

25          MR. RORTY:  I BELIEVE THERE'S AN ADDITIONAL PLEADING

1        OF THE GOVERNMENT'S.

2                MR. O'REILLY:  I THOUGHT, YOUR HONOR, THE UNITED

3        STATES REPLY TO MR. RORTY'S --

4                THE COURT:  YES.

5                MR. O'REILLY:  YES.

6                MR. RORTY:  THANK YOU.

7                THE COURT:  ALL RIGHT.  THAT'S DOCUMENT 547.  ALL

8        RIGHT.  THANK YOU.

9            I'M HAPPY TO HEAR ARGUMENT FROM THE PARTIES.  SO

10       MR. O'REILLY, MS. WONG, SHOULD I HEAR FROM YOU ABOUT YOUR

11       PLEADINGS?

12               MR. O'REILLY:  YOUR HONOR, I DON'T WANT TO BELABOR

13       WHAT WE'VE ALREADY PUT BEFORE THE COURT, BUT I DO WANT TO

14       BASICALLY LAY THIS OUT AND EXPLAIN WHY THE GOVERNMENT'S

15       POSITION IS AS WE ARE TAKING.

16           MR. LIGHTER STANDS CONVICTED OF SERIOUS FINANCIAL CRIMES

17       NOT JUST AGAINST THE UNITED STATES BUT ALSO AGAINST INDIVIDUALS

18       WITH THE FRAUD LOSS CALCULATED IN THE DRAFT PSR OF MILLIONS OF

19       DOLLARS.

20           AND ONE THING THAT DOES GREATLY CONCERN THE UNITED STATES

21       IS THE REFERENCE IN THE DRAFT PSR -- EXCUSE ME, NO -- IN THE

22       MOST RECENT FMC BUTNER REPORT, AND I JUST WANT TO READ IT, THAT

23       WHILE MR. LIGHTER'S RELEASE WOULD NOT CREATE A SUBSTANTIAL RISK

24       OF BODILY INJURY TO ANOTHER PERSON OR SERIOUS DAMAGE TO

25       PROPERTY OF ANOTHER AS A RESULT OF HIS MENTAL DISEASE OR

1   DEFECT, THE REPORT GOES ON TO STATE MR. LIGHTER MAY CONTINUE TO

2   PRESENT THE RISK OF FINANCIAL ECONOMIC HARM TO OTHERS DUE TO

3   HIS INTACT COGNITIVE FUNCTIONING.

4        HE WAS CONVICTED OF DEFRAUDING VERY INTELLIGENT

5   INDIVIDUALS, DOCTORS OF PSYCHIATRY, A PROFESSOR OF

6   ARCHITECTURE, OUT OF MILLIONS OF DOLLARS AND FMC BUTNER HAS

7   STATED THAT THAT COGNITIVE FUNCTIONING IS STILL THERE EVEN IF

8   HE'S PRESENTLY NOT COMPETENT TO ASSIST COUNSEL.  AND HE IS A

9   CONVICTED DEFENDANT.

10        OUR PERCEPTION OF WHAT HAS HAPPENED AND WHERE WE ARE NOW

11   IS THE ANALYSIS FOR COMPETENCY HAS BEEN COMPLETE.  AND 4244 IS

12   NOT -- DOES NOT ADDRESS WHETHER OR NOT A DEFENDANT IS

13   COMPETENT.

14        IT ADDRESSES WHAT TO DO WITH A CONVICTED INDIVIDUAL, OF

15   WHICH MR. LIGHTER IS, WHO, BY REASON OF DISEASE OR MENTAL

16   DISEASE OR DEFECT, SHOULD NOT BE PLACED IN A GENERAL

17   POPULATION.

18        AND AS WE LAY OUT IN OUR PAPERS, THERE IS SOMETHING --

19   THERE SHOULD BE THE PROVISIONAL SENTENCE AND THEN IF AND WHEN

20   HIS COMPETENCY IS REGAINED EITHER THROUGH MEDICAL ADVANCES OR

21   BY SOME OTHER WAY, HE THEN WOULD COME BACK AND BE SENTENCED AND

22   THE SENTENCE THAT UNDER THE DRAFT PSR THAT HE WAS LOOKING AT

23   WAS 15 TO 20 YEARS.

24        AND HAVING -- I HAVE TAKEN A QUICK GLANCE AT THE CHANGES

25   OF THE MOST RECENT VERSION OF THE SENTENCING GUIDELINES THAT

1    WOULD REDUCE -- WE CALCULATE IT WOULD REDUCE THE OFFENSE LEVEL

2    BY 1.  SO INSTEAD OF 15 TO 20 IT WOULD BE ROUGHLY 12 AND A HALF

3    TO 17 YEARS.

4        SO THIS IS A VERY SIGNIFICANT AND SERIOUS CRIME WITH

5    INDIVIDUAL VICTIMS UNLIKE THE CASE PROVIDED BY MR. RORTY WHERE

6    MR. CHAUDHRY HAD A SOMEWHAT SIMILAR SITUATION AND WAS CONVICTED

7    AT TRIAL.  POST-TRIAL HE WAS DETERMINED NOT TO BE COMPETENT TO

8    ASSIST COUNSEL FOR SENTENCING, AND MR. CHAUDHRY WAS PLACED ON A

9    PRESENTENCE SUPERVISION BY JUDGE BREYER UP IN THE NORTHERN

10   DISTRICT.

11       BUT WHAT MR. CHAUDHRY'S CRIME WAS, WAS DEFRAUDING THE

12   I.R.S. AND COMMITTING STRUCTURING VIOLATION TO EVADE REPORTING

13   REQUIREMENTS.  THERE WERE NO INDIVIDUAL VICTIMS.  HE WAS A TAX

14   CHEAT.

15       AND THE OTHER THING THAT I CAN TELL YOU, HAVING DISCUSSED

16   THE MATTER WITH THE U.S. ATTORNEY'S OFFICE UP THERE, THAT IS

17   NOT AN APPEALABLE ORDER.  THERE IS -- BECAUSE IT'S NOT A FINAL

18   ORDER, THE U.S. ATTORNEY'S OFFICE SOUGHT TO APPEAL THE JUDGE'S

19   RULING AND THE NINTH CIRCUIT CAME BACK AND SAID WE DON'T HAVE

20   JURISDICTION YET.

21       UNLIKE IF THIS COURT WERE TO IMPOSE A PROVISIONAL

22   SENTENCE, AS WE ARE URGING THE COURT TO DO, THAT IS AN

23   APPEALABLE ORDER AND IT COULD BE REVIEWED AND IT COULD -- A

24   GOOD SOLID DIRECTION COULD BE OBTAINED FOR ANY FUTURE CASE.

25       THAT, IN ESSENCE, IS OUR POSITION THAT MR. LIGHTER

1    CONTINUES TO BE A DANGER NOT BY REASON OF HIS MENTAL DISEASE OR

2    DEFECT BUT BECAUSE OF HIS INTACT COGNITIVE FUNCTION.  HE STANDS

3    CONVICTED OF SERIOUS FINANCIAL CRIMES AND THE DRAFT PSR

4    INDICATES A VERY SIGNIFICANT SENTENCE IS WARRANTED UNDER THE

5    GUIDELINES.

6         TODAY HE HAS BEEN IN CUSTODY FOR APPROXIMATELY JUST UNDER

7    FOUR YEARS.  IF WE WERE TO PROCEED TO SENTENCING, AND WE CAN'T

8    BECAUSE HE'S BEEN FOUND TO BE INCOMPETENT, IT IS LIKELY THAT

9    THE GUIDELINE SENTENCE TO BE IMPOSED WOULD BE SIGNIFICANTLY

10   GREATER THAN THAT.

11        AND FOR THE REASONS THAT WE PUT IN OUR PLEADINGS AND FOR

12   THE REASONS THAT I JUST DISCUSSED, WE DO BELIEVE SECTION 4244

13   PROVIDES FOR AND A PROVISIONAL SENTENCE SHOULD BE IMPOSED.

14             THE COURT:  THANK YOU VERY MUCH.

15             MR. O'REILLY:  THANK YOU.

16             THE COURT:  MR. RORTY.

17             MR. RORTY:  THANK YOU, YOUR HONOR.  LET ME FIRST

18   JUST ADDRESS MR. O'REILLY'S RECENT COMMENTS HERE.

19        THE QUESTION OF THE SEVERITY OF THE OFFENSE, THE LOSS, THE

20   NATURE OF THE OFFENSE, I HAVE NO FACTUAL DISAGREEMENT WITH THE

21   GOVERNMENT'S REPRESENTATIONS.

22        BUT THAT -- THOSE FACTORS ARE SIMPLY IRRELEVANT TO THESE

23   PROCEEDINGS.  WE HAVE BEEN WALKING DOWN A STATUTORY PATH THAT

24   HAS CLEAR GUIDELINES ABOUT HOW TO PROCEED, AND THE SEVERITY OF

25   THE CHARGES AND THE POTENTIAL SENTENCE ARE SIMPLY NOT PART OF

1    THAT CALCULUS.

2         I UNDERSTAND THE GOVERNMENT'S FEELING ABOUT IT.  I

3    UNDERSTAND THE FEELINGS OF VICTIMS IN THE CASE AND SO FORTH.

4         BUT THOSE FACTORS SIMPLY ARE NOT PRESENT IN THE ANALYSIS

5    WHICH IS NOW BEFORE THE COURT.

6         THE NARROW ANALYSIS IS FOUNDED IN THE TENSION THAT THE

7    GOVERNMENT, I THINK, WOULD LIKE TO SEE AND WOULD LIKE TO ARGUE

8    EXISTS BETWEEN SECTION 4244 AND SECTION 4246.

9         MY POSITION IS THAT THERE'S NOT A TENSION BETWEEN THOSE

10   TWO STATUTES AND THERE IS NO AMBIGUITY.

11        4244 AND THE CONCEPT OF A PROVISIONAL SENTENCE IS NOT

12   DESIGNED TO AND HAS, TO MY KNOWLEDGE, AND TO THE BEST OF MY

13   RESEARCH, AND I BELIEVE THE GOVERNMENT'S RESEARCH, HAS NEVER

14   BEEN HELD TO APPLY TO A DEFENDANT WHO HAS BEEN FOUND NOT TO BE

15   COMPETENT.

16        THE CASES CITED BY THE GOVERNMENT JENSEN, ABOU-KASSEM, AND

17   ROTHMAN ARE ALL NOT ONLY DISTINGUISHABLE BUT SIMPLY

18   INAPPLICABLE TO THESE FACTS.

19        I GO THROUGH THEM AND I WON'T BELABOR THE POINT.  I

20   DISCUSS THEM IN MY PLEADINGS.  BUT IN SHORT, JENSEN DEALS WITH

21   THE EXISTENCE OF A MENTAL DISEASE OR DEFECT OTHER THAN

22   COMPETENCE, NOT RELATED TO COMPETENCY.  AND SO IT INVOKES THE

23   DISCUSSION OF 4244 WHERE COMPETENCY HAS NOT BEEN AN ISSUE.

24        IN ABOU-KASSEM THE DEFENDANT WAS FOUND TO BE COMPETENT AND

25   SUFFERING FROM A MENTAL DISEASE OR DEFECT AND THUS WAS

1    PROVISIONALLY SENTENCED.  THAT CASE, IN FACT, HIGHLIGHTS THE

2    DISTINCTION BETWEEN 4241 AND 4246 AND THEIR RELATIONSHIP AND

3    4244.  THAT HELPED SERVE TO DEFINE THE DISTINCTION BETWEEN

4    MENTAL DISEASE OR DEFECT AS DESCRIBED IN SECTION 4244 AND

5    COMPETENCY AT ISSUE IN THIS CASE AND INVOKED BY SECTIONS 4241

6    AND 4246.

7        AND IN ROTHMAN, THE LAST CASE CITED BY THE GOVERNMENT, THE

8    ONLY ISSUE BEFORE THE COURT WAS WHETHER THE DEFENDANT WAS

9    COMPETENT.  THE COURT FOUND HE WAS INCOMPETENT BUT EXPLICITLY

10   DECLINED TO REACH THE QUESTION OF WHETHER 4241 OR 4244 APPLIES.

11       SO THERE SIMPLY IS NO AUTHORITY FOR A PROVISIONAL SENTENCE

12   IN THIS CASE.  I THINK THE PLACE WE ARE -- WE HAVE ARRIVED AT

13   IS, AS THE COURT IS WELL AWARE THAT MR. LIGHTER IS NOT

14   COMPETENT, THE BUREAU OF PRISONS HAS CONCLUDED THAT HE WILL NOT

15   BE RESTORED TO COMPETENCY, NOT SUBSTANTIALLY LIKELY TO BE

16   RESTORED TO COMPETENCY, AND THAT HE DOES NOT MEET THE

17   DEFINITION OF DANGER AS DESCRIBED BY SECTION 4246.

18       IF ALL OF THOSE THINGS ARE TRUE, THE END OF THAT STATUTORY

19   ROAD IS MR. LIGHTER'S RELEASE.  THERE SIMPLY IS NO OTHER REMEDY

20   OR PROVISION OF LAW THAT PROVIDES OTHERWISE.

21       AND DESPITE THE GOVERNMENT'S CONCERNS REGARDING THE

22   SEVERITY OF THE CHARGES, A POTENTIAL SENTENCE AT ANYTHING ELSE,

23   AGAIN, THOSE ARE NOT FACTORS.  THEY MAY OR MAY NOT BE

24   REALISTICALLY FOUNDED.  THEY MAY OR MAY NOT BE PRACTICAL

25   CONSIDERATIONS, BUT THEY'RE NOT PART OF THE STATUTORY SCHEME

1          THAT THE COURT IS ADDRESSING HERE.

2               SO I THINK THAT -- UNLESS THE COURT HAS QUESTIONS OR WOULD

3          LIKE ME TO ADDRESS SPECIFIC CASES OR ANYTHING ELSE ABOUT THE

4          STATUTORY SCHEME, I'M PREPARED TO SUBMIT.

5                    THE COURT:  ALL RIGHT.

6                    MR. RORTY:  BUT I THINK IT'S A FAIRLY CLEAR CUT

7          ISSUE.

8               WOULD THE COURT LIKE ME TO ADDRESS ANY SPECIFIC COMPONENTS

9          OF THE ARGUMENTS OR ANY OTHER ASPECT OF THE STATUTES?

10                   THE COURT:  NO.

11                   MR. RORTY:  OKAY.  THANK YOU.

12                   THE COURT:  THANK YOU.  ANYTHING FURTHER?

13                   MR. O'REILLY:  YOUR HONOR, I THINK THE CASES DO

14         INDICATE THAT THEY'RE CONTRARY TO WHAT MR. RORTY IS SAYING.  IT

15         IS AMBIGUOUS.  IT'S A PROBLEMATIC AREA BECAUSE WHAT MR. RORTY

16         IS ARGUING IS WE HAVE A CONVICTED DEFENDANT, CONVICTED OF

17         SERIOUS CRIMINAL CONDUCT WHO BY THE LOGIC OF MR. RORTY'S

18         ARGUMENT IS SIMPLY LET FREE.  AND WHETHER THIS WOULD HAVE BEEN

19         THREE AND A HALF YEARS LATER OR A YEAR LATER OR SIX MONTHS

20         LATER WOULD BE IMMATERIAL UNDER THAT SAME LOGIC.

21              THAT DEFIES COMMON SENSE AND THE STATUTORY ANALYSIS

22         INCLUDES THE APPLICATION OF COMMON SENSE.

23              HERE WE BELIEVE THAT 4244 PROVIDES NO AMBIGUITY IN SOME

24         SENTENCE AS IF YOU HAVE SOMEBODY WHO IS MENTALLY OR SUFFERING

25         FROM MENTAL DISEASE OR DEFECT, A PROVISIONAL SENTENCE CAN BE

1    WARRANTED.  IT'S UP TO THE COURT WHETHER IT IS OR IS NOT

2    WARRANTED, AND WE ARGUE THAT THE COURT SHOULD FIND THAT IT IS.

3        ONE THING THAT WE ALSO DO, YOU KNOW, WANT TO RESTATE BY

4    OUR ARGUMENT IF WE'RE WRONG, WE'RE BACK HERE AND THE NINTH

5    CIRCUIT SAYS, HEY, YOU MADE A MISTAKE.  FINE, WE STRAIGHTEN

6    THAT OUT.

7        OTHER THAN MR. RORTY'S ARGUMENT, THAT DOESN'T GET REVIEWED

8    AND THAT, WE THINK, IS ALSO SOMETHING THAT THE COURT SHOULD AT

9    LEAST CONSIDER IN REACHING ITS DECISION.

10        THE COURT:  THANK YOU VERY MUCH.  THANK YOU.  AND,

11    OF COURSE, MR. O'REILLY, YOU AND MS. WONG WERE PRESENT IN THIS

12    COURTROOM WHEN THE MATTER WAS TRIED IT WAS YEARS AGO.

13        MR. RORTY, YOU'RE ON YOU'RE FEET.

14        MR. RORTY:  I AM.  I WANTED TO MAKE ONE BRIEF

15    RESPONSE TO MR. O'REILLY.

16        THE COURT:  ALL RIGHT.

17        MR. RORTY:  I THINK THAT THE CLARITY AND GUIDANCE

18    THAT THE COURT MAY NEED IN THIS CASE IS FOUND IN TWO PLACES.

19        IN ABOU-KASSEM, AND I'M SORRY, THAT'S A-B-U - K-A-S-S-E-M,

20    IS THE CASE TO WHICH I'VE BEEN REFERRING, MR. O'REILLY'S

21    ARGUMENT, THE POSITION HERE REALLY AMOUNTS TO ARGUING THAT

22    MENTAL DISEASE OR DEFECT AND COMPETENCE SHOULD BE TREATED

23    SIMILARLY AND ARE THE SAME FOR PURPOSES OF THIS ANALYSIS.

24        THAT SPECIFIC QUESTION WAS ADDRESSED BY ABU-KASSEM, AND

25    THIS IS A QUOTE FROM ABU-KASSEM, "PERSONS INCOMPETENT TO STAND

1    TRIAL AND PERSONS INCOMPETENT TO STAND TRIAL WHO SUFFER FROM A

2    MENTAL DISEASE OR DEFECT AT THE TIME OF SENTENCING ARE NOT

3    SIMILARLY SITUATED.  THEY'RE NOT THE SAME CONCEPT.  THEY'RE NOT

4    SIMILARLY SITUATED AND THE SAME STATUTORY PROVISIONS DO NOT

5    APPLY.

6         ALTHOUGH THERE IS A DEARTH OF CASE LAW ON THIS SPECIFIC

7    POINT, THIS COURT DOES HAVE OTHER GUIDANCE AND LUCKILY IT'S

8    GOOD GUIDANCE FROM WITHIN THIS DISTRICT.  JUDGE BREYER HAD

9    OCCASION TO WALK THIS EXACT PATH AND --

10              THE COURT:  I READ THAT.  THAT'S IN YOUR PLEADINGS.

11        SO MR. WONG AND MR. O'REILLY WERE THE TRIAL ATTORNEYS IN

12   THIS CASE, AND THE TRIAL TOOK A NUMBER OF DAYS, WEEKS, PERHAPS,

13   AND A NUMBER OF WITNESSES.  AND I RECALL THIS COURTROOM FILLED

14   WITH BOXES WITH THE RECORDS OF THE OFFENSES AND THE DISCOVERY

15   IN THE CASE.  AND THE CASE WAS LITIGATED TO A JURY, AND THE

16   COMMUNITY RETURNED WITH THEIR VERDICTS AFTER HEARING THE

17   EVIDENCE.

18        AND, OF COURSE, WE KNOW THE HISTORY SUBSEQUENT TO THE

19   CONVICTION.  WE KNOW THAT MR. LIGHTER HAD A CHANGE OF COUNSEL,

20   PERHAPS THREE, PERHAPS MORE, BUT PERHAPS AT LEAST THREE COUNSEL

21   SUBSEQUENT OR IN THESE PROCEEDINGS.

22        WE KNOW THAT THE ISSUE OF MR. LIGHTER'S MENTAL HEALTH AND

23   MENTAL CAPACITY WERE RAISED LATER BY MR. RORTY, CURRENT

24   COUNSEL, AND THE COURT MADE RULINGS ON THOSE AS TO TRIAL

25   ISSUES, NEW TRIAL ISSUES.

1     AND THEN SUBSEQUENT TO THOSE MOTIONS THEN WE KNOW THAT THE

2     PATH THAT THIS CASE TOOK REGARDING MR. LIGHTER'S MENTAL STATUS.

3     AND IT WAS A LONG PATH AND A SOMEWHAT, I'M QUITE

4     CONFIDENT, A FRUSTRATING PATH FOR THE GOVERNMENT AND FOR

5     MR. LIGHTER.  HE WAS REFERRED FOR MEDICAL EVALUATION.  I THINK

6     WE HAVE AT LEAST THREE REPORTS THAT SPEAK TO HIS MEDICAL

7     CONDITION.  THERE'S UNANIMITY IN THOSE RECORDS, AND I RECOGNIZE

8     IT.  AND NO COUNSEL HERE HAVE TALKED ABOUT THAT.  BUT UNANIMITY

9     WAS IT WAS THE LACK OF CONFIDENCE, AND THE COURT SO FOUND BY

10    THE APPROPRIATE BURDEN OF PROOF STANDARD.

11    THERE WERE PROBLEMS THROUGHOUT THE CASE ALSO,

12    TRANSPORTATION PROBLEMS.  MR. LIGHTER, WHILE ORDERED TO BUTNER,

13    I THINK IT WAS THE FIRST TIME, PERHAPS THE SECOND TIME, WE

14    DISCOVERED ONLY PERHAPS, PERHAPS A MONTH, PERHAPS MORE THAN A

15    MONTH LATER THAT HE STILL WAS IN THE LOCAL COUNTY JAIL HAVING

16    NOT RECEIVED THE BENEFIT OF THE EVALUATION.  HE LINGERED,

17    LANGUISHED HERE, AND IF I COULD USE THAT WORD, IN THE LOCAL

18    COUNTY JAIL UNTIL HIS PRESENCE WAS DISCOVERED HERE SUBSEQUENT

19    TO A STATUS CONFERENCE THAT WAS SET BY THE COURT, AND WE ALL

20    DISCOVERED AT THAT TIME THAT HE HAD NOT BEEN MOVED TO

21    NORTH CAROLINA FOR THAT INTERVIEW.

22    WE TOOK ACTION.  ALL OF THE PARTIES ARE CONCERNED ABOUT

23    THAT.  WE TOOK ACTION.  HE WAS SENT TO BUTNER.  AND, AGAIN,

24    THERE WERE SOME DELAYS THAT -- I ONLY POINT THIS OUT TO, TO, I

25    SUPPOSE, REVISIT THE TRAIL THAT THIS CASE HAS TAKEN.

1    AS TO THE RESULTS OF THOSE REPORTS, WE ALL KNOW WHAT THEY

2    ARE, BUT WHEN WE'RE TALKING ABOUT THEM, THIS REALLY IS AN ISSUE

3    AND AS I LOOK AT IT 4244, 4246, 4241, WHICH STARTED.  THAT WAS

4    THE GATEWAY TO THE PATH THAT WE TAKE OR FIND OURSELVES IN NOW.

5    IT WOULD -- IT SEEMS TO ME THAT THE UNDERLYING ISSUE IS

6    CAN SOMEONE WHO IS NOT COMPETENT BE SENTENCED?  AND I THINK THE

7    CODE, I THINK THE CODES INSTRUCT US THAT IT IS A VIOLATION OF

8    DUE PROCESS FOR AN INDIVIDUAL WHO DOES NOT HAVE MENTAL

9    COMPETENCY IN THE CRIMINAL JUSTICE SYSTEM TO BE SENTENCED.

10   THAT'S SOMETHING THAT CANNOT OCCUR.

11   AND THAT'S, I THINK, IS WHERE THE TENSION OR THE DISPARITY

12   BETWEEN 4244 AND 4246 THROUGH 4241, I THINK, FROM MY VIEW,

13   COMES IN.

14   AN INCOMPETENT INDIVIDUAL CANNOT BE SENTENCED.  THE 4244

15   SCHEME IS AN APPROPRIATE ONE AND MY SENSE IS THAT IT'S WELL

16   FOUNDED BECAUSE THE RECOGNITION OF CONGRESS IS THAT IT'S

17   INAPPROPRIATE TO SENTENCE AN INCOMPETENT PERSON.  THEY CANNOT

18   BE SENTENCED.  THAT'S A VIOLATION OF DUE PROCESS.

19   WHAT SHOULD OCCUR IN THE ABSENCE OR OF COMPETENCY IS AS

20   4244 DIRECTS.

21   AN INDIVIDUAL CAN RECEIVE WHAT IS CALLED A PROVISIONAL

22   SENTENCE, AND THEY ARE SENT TO A FACILITY SUCH THAT A DIRECTOR

23   COULD ASSIST THEM, PROVIDE THE NECESSARY TREATMENT, NECESSARY

24   GUIDANCE, INCLUDING PERHAPS PSYCHOTROPIC MEDICATION AND OTHERS

25   THAT COULD RESTORE THAT INDIVIDUAL TO A LEVEL OF A SITUATION

1    WHERE SHE OR HE THEN COULD BE SENTENCED.

2         OUR SITUATION IS DIFFERENT HERE FOR A NUMBER OF REASONS.

3    FIRST OF ALL, I THINK THE STATUTORY SCHEMES ARE DIFFERENT.

4    MR. LIGHTER HAS BEEN FOUND NOT TO BE COMPETENT.

5         WE KNOW THAT HIS PHYSICAL CONDITIONS WITH PARKINSON'S ALSO

6    INDICATE AND THE BUTNER REPORT TELLS US THAT AS FAR AS

7    RESTORATION OF ANY COMPETENCY, THAT'S FRUSTRATING BECAUSE OF

8    HIS PARKINSON'S.  HE WILL NOT, PURSUANT TO THE BUTNER REPORT,

9    HE WILL NOT GAIN OR NOT BE RESTORED BECAUSE OF THE PROBLEMS

10   WITH THE PSYCHOTROPIC MEDICATION THAT WILL SEVERELY IMPACT OR

11   AFFECT HIS LIFESPAN SHOULD HE BE ASSIGNED A REGIMENT OF

12   PSYCHOTROPIC MEDICATION.  THAT WOULD INTERFERE AND PUT HIS LIFE

13   AT RISK GIVEN HIS PARKINSON'S DISEASE.

14        THE RESULT OF THAT IS THAT IF HE WERE TO BE UNDER 4244 AND

15   BE PROVISIONALLY SENTENCED, THAT WOULD BE, IN ESSENCE, A

16   SENTENCE TO THE MAXIMUM TERM BECAUSE WE KNOW HIS COMPETENCY

17   WOULD NOT BE RESTORED AND THEY WOULD KEEP HIM FOR THE MAXIMUM

18   TERM PROVIDED WHICH I THINK MR. O'REILLY TELLS US IS 20-SOME

19   YEARS OR SOMETHING LIKE THAT.

20        THAT WOULD -- THAT JUST SEEMS TO ME TO BE A MAXIMUM

21   SENTENCE WITHOUT A HEARING, WITHOUT ANY CONSIDERATION OF THE

22   3553 FACTORS OR ANY OTHER FACTORS THAT WOULD BE APPROPRIATE.  I

23   DON'T THINK ANYBODY IS GOING TO ADVOCATE FOR THAT.

24        WE TOOK THE PATH WE DID AND THE COURT DID SENDING

25   MR. LIGHTER TO BUTNER TO DETERMINE UNDER 4241, AND THAT WAS THE

1    SCHEME, THAT WAS THE PATH THAT THE COURT TOOK, TO DETERMINE

2    UNDER THE CODE WHAT RELIEF IS AVAILABLE TO THE COURT VIS-A-VIS

3    SENTENCING POST-CONVICTION, POST-CONVICTION BUT PRESENTENCING.

4         MR. LIGHTER PRESENTS, AS WE ALL KNOW, HE'S NOT COMPETENT

5    TO BE SENTENCED.  BUTNER TELLS US THAT THE OTHER DOCTORS HAVE

6    TOLD US THAT THERE'S UNANIMITY IN THAT.

7         MR. LIGHTER'S COMPETENCY FOR PURPOSES OF THE CRIMINAL

8    JUSTICE SYSTEM CANNOT BE RESTORED GIVEN THIS SITUATION WITH HIS

9    PHYSICAL CONDITION, PARKINSON'S DISEASE.

10        THE COURT DOES FIND, AND I DO FIND THAT IT IS APPROPRIATE

11   THEN TO FOLLOW THROUGH AND GO FORWARD WITH AND THE REASON THAT

12   THE COURT SENT OR RETURNED MR. LIGHTER TO BUTNER FOR THE

13   ANALYSIS OF WHETHER OR NOT -- A RISK ANALYSIS, AND THAT WAS THE

14   COURT'S PURPOSE TO DETERMINE WHETHER OR NOT RELEASE OF

15   MR. LIGHTER AT THIS TIME WOULD POSE A RISK AND THREAT TO THE

16   COMMUNITY AND WE HAD SOME DISCUSSIONS.

17        MS. WONG APPEARED, I THINK, LAST AND URGED THE COURT ALSO

18   TO ALSO ASK BUTNER ABOUT ECONOMIC CRIMES, WHETHER OR NOT THAT

19   WAS A RISK, AND I RESPECTFULLY DECLINED HER INVITATION TO DO

20   SO.

21        THE REPORT REFLECTS, AS MR. O'REILLY POINTS OUT, THE LAST

22   SENTENCE OF THE REPORT, THE ANALYSIS, THE CONCLUSION SPEAKS TO

23   BUTNER'S OPINION, THE DOCTOR'S, PARDON ME, OPINION ABOUT THE

24   RISK OF FINANCIAL ECONOMIC HARM TO OTHERS DUE TO HIS INTACT

25   COGNITIVE FUNCTION I THINK IS THE PHRASE THAT THEY USE.

1    AND THAT MAY PRESENT ITSELF, BUT WHEN I LOOK AT THE

2    ANALYSIS AND THE PURPOSE OF 4246 AND THAT RISK ANALYSIS, I'M

3    LEFT WITH THE OPINION AND THE BUTNER REPORT TELLS US THAT HIS

4    CONDITION DOES NOT MEET THE CRITERIA FOR COMMITMENT PURSUANT TO

5    TITLE 18 UNITED STATES CODE SECTION 4246.

6    THE BUTNER REPORT INFORMS US THAT THEIR OPINION IS THAT

7    HIS RELEASE WOULD NOT CREATE A SUBSTANTIAL RISK OF BODILY

8    INJURY TO ANOTHER PERSON OR SERIOUS DAMAGE TO PROPERTY OF

9    ANOTHER AS A RESULT OF MENTAL DISEASE OR DEFECT.  THAT'S WHAT

10   THE STATUTE REQUIRES US TO LOOK FOR WHEN WE DO A RISK ANALYSIS.

11   IN REVIEWING THIS CASE AND THE TOTALITY OF THE

12   CIRCUMSTANCES AND PARTICULARLY THESE REPORTS, THE COURT FINDS,

13   AND I WILL ADOPT THE RECOMMENDATION AND THE FINDINGS OF THE

14   BUTNER REPORT, AND I DO FIND THAT RELEASE OF MR. LIGHTER WOULD

15   NOT CREATE A SUBSTANTIAL RISK OF BODILY INJURY TO ANOTHER

16   PERSON OR SERIOUS DAMAGE TO PROPERTY OF ANOTHER AS A RESULT OF

17   MENTAL DISEASE OR DEFECT.

18   THE COURT, THEREFORE, WOULD ORDER MR. LIGHTER RELEASED

19   FROM CUSTODY FORTHWITH.

20   THIS PRESENTS SOME OTHER ISSUES TO MR. LIGHTER.  I DO NOT

21   KNOW WHAT HIS CIRCUMSTANCES ARE NOW IN REGARDS TO -- AND,

22   MR. RORTY, THIS IS PERHAPS SOMETHING THAT MIGHT CONTINUE UNDER

23   YOUR CJA REPRESENTATION.

24   I DON'T KNOW IF MR. LIGHTER HAS ANY FUNDS IN HIS BOOKS, AS

25   THEY SAY.  HE WILL BE RELEASED FROM THE LOCAL FACILITY, THE

1    LOCAL COUNTY JAIL, I PRESUME.

2         I DO -- I'LL TURN MY ATTENTION TO THE SUBMITTED 4282 ORDER

3    AND 18 U.S.C. 4282 DOES PROVIDE WHEN AN INDIVIDUAL CAN BE

4    RETURNED BY THE UNITED STATES MARSHAL TO THE LOCATION OF HIS

5    ARREST, AND WE KNOW MR. LIGHTER WAS NOT ARRESTED.  HE APPEARED

6    IN COURT HERE IN SAN JOSE PURSUANT TO A SUMMONS.

7         I BELIEVE THAT SECTION ALSO ALLOWS, THE CODE ALSO ALLOWS

8    AND PERMITS FOR THE MARSHAL TO PROVIDE TRANSPORTATION.  I DON'T

9    KNOW ABOUT SUSTENANCE.  I'M NOT SURE WHAT THAT MEANS IN THE

10   CODE.

11        BUT MY SENSE IS THAT THE MARSHAL WILL PROVIDE AND ENGAGE A

12   TRANSPORTATION VIA AIRPLANE, I ASSUME, TO HIS RESIDENCE WHICH I

13   BELIEVE IS HAWAII.  I DON'T RECALL THE CITY BUT -- OR THE

14   ISLAND, I SHOULD SAY, BUT I WOULD OTHERWISE SIGN THIS ORDER

15   ORDERING THE MARSHAL TO RETURN HIM TO HIS LOCAL, HIS RESIDENCE,

16   AND THE MARSHAL WILL HAVE TO ENGAGE A TRANSPORTATION FOR THAT.

17        THAT TAKES SOME TIME, I'M TOLD.

18        MR. RORTY, THIS IS WHERE I GO BACK TO YOU, YOUR

19   OBLIGATIONS REPRESENTING YOUR CLIENT, IF HE'S RELEASED, I DON'T

20   KNOW WHAT HIS STATUS IS, HE SUFFERS FROM PARKINSON'S DISEASE,

21   IF HE HAS ANY FUNDS AT ALL TO FIND SHELTER AT THIS TIME.  I

22   SUPPOSE I LEAVE THAT TO YOUR GOOD GRACES TO FIGURE THAT OUT.

23             MR. RORTY:  MAY I RESPOND, YOUR HONOR?  I FILED A

24   DECLARATION TOGETHER WITH MY REQUEST THAT LAYS OUT

25   MR. LIGHTER'S CIRCUMSTANCES.

1      THE COURT IS QUITE CORRECT, HE'S NOT ONLY INDIGENT, HE

2   POSSESSES NO CLOTHES, NO IDENTIFICATION, AND NO LOCAL

3   RELATIONSHIPS.

4           THE COURT:  WHAT WAS HE -- PARDON ME FOR

5   INTERRUPTING.  WAS HE BOOKED INTO CUSTODY -- WHEN HE WAS

6   REMANDED TO CUSTODY BY THE COURT, THE MARSHALS MOST LIKELY

7   WOULD HAVE PLACED HIS CLOTHING AND ALL PERSONAL ITEMS WITH THE

8   CUSTODIAL FACILITY.  MY SENSE IS THAT THE SHERIFF'S OFFICE HAS

9   THOSE OR THE MARSHALS.

10          MR. RORTY:  I BELIEVE THAT THOSE ITEMS HAVE BEEN

11   RETURNED TO FAMILY IN HAWAII SOME TIME AGO.

12          THE COURT:  I SEE.

13          MR. RORTY:  IF I MAY, I WANT TO THANK AND

14   ACKNOWLEDGE THE ASSISTANCE BOTH OF THE MARSHAL SERVICE AND THE

15   PRETRIAL SERVICES.

16      I'VE SPOKEN WITH MS. ANDERSON, MR. LEW, MR. HARWELL AND

17   OTHERS CONCERNING THIS SITUATION BECAUSE ALL PARTIES ARE

18   CONCERNED THAT THIS PROCEED IN A THOUGHTFUL AND EFFECTIVE WAY

19   THAT DOESN'T HARM EITHER THE GOVERNMENT OR MR. LIGHTER'S

20   INTERESTS.

21      I THINK MY UNDERSTANDING, AND I WOULD PLEASE INVITE ANY

22   CORRECTION FROM THE COURT IF I GET IT WRONG, BUT IF THE COURT

23   DOES SIGN THE ORDER, THEY WILL PLACE MR. LIGHTER ON A

24   COMMERCIAL FLIGHT TO HAWAII.  THAT CAN'T BE DONE TODAY.  IT

25   WOULD BE DONE, AND I WOULD INVITE THE MARSHAL'S SUGGESTION TO

1      AN APPROPRIATE DATE IN THE NEAR FUTURE.

2           MY PROPOSAL IS THAT THE COURT SIMPLY STAY THE ISSUANCE OF

3      ITS RELEASE ORDER UNTIL WE HAVE A CLEAR PLAN THAT WON'T

4      JEOPARDIZE MR. LIGHTER'S HEALTH OR INTERESTS.

5           IF THE MARSHAL SERVICE MIGHT BE INVITED TO SUGGEST A DATE

6      AND TIME, OR WE COULD POTENTIALLY RETURN FOR STATUS TO BE

7      INFORMED BY THE MARSHAL AS TO A PARTICULAR DATE, I THINK

8      IT'S -- DESPITE MR. LIGHTER'S ENTITLEMENT TO RELEASE, I THINK

9      HE MIGHT AGREE AND IT'S IN HIS INTEREST IF HE HAS TO STAY A

10     COUPLE OF MORE DAYS IN CUSTODY IN ORDER TO ASSURE THAT HE IS

11     NOT COMPROMISED.

12          SO IF THE COURT DOESN'T MIND ASKING A REPRESENTATIVE OF

13     THE MARSHAL SERVICE TO ADDRESS THE COURT, THAT WOULD BE HELPFUL

14     TO GUIDE US AS TO HOW WE'RE GOING TO PROCEED.

15              THE COURT:  MY UNDERSTANDING IS THAT THE AIRPLANE

16     TICKET HAS TO BE PURCHASED THROUGH SOME DIVISION IN THE EAST

17     COAST, AND THAT THE GOVERNMENT PROCUREMENT OFFICE IS NOT

18     LOCATED LOCALLY.  IT HAS TO BE DONE, OF COURSE, BECAUSE IT'S

19     THE GOVERNMENT, AND IT HAS TO BE DONE VERY CAREFULLY AND WITH

20     HIGH QUALITY CONTROL.

21          SO IT'S -- MY SENSE IS, MY UNDERSTANDING IS THAT THAT

22     HAPPENS SOMEWHERE ON THE EAST COAST, THE TICKET IS PURCHASED,

23     AND I DON'T KNOW WHAT THOSE ARRANGEMENTS ARE.

24          THE OTHER QUESTION I HAVE IS IF MR. LIGHTER DOES NOT HAVE

25     IDENTIFICATION, I DON'T KNOW HOW HE'S GOING TO BE PERMITTED TO

1      BOARD AN AIRPLANE.

2              MR. RORTY:  I SPOKE WITH MR. LEW ABOUT THAT.

3      PRETRIAL SERVICES IS ABLE TO PROVIDE HIM WITH A VERY LIMITED

4      IDENTIFICATION.  IT'S NOT A FEDERALLY SANCTIONED OR STATE

5      SANCTIONED IDENTIFICATION, BUT IT BEARS HIS NAME, BIRTH DATE,

6      AND PICTURE.  AND I CAN REPRESENT TO THE COURT THAT THE LAST

7      TIME THAT I DEALT WITH THIS ISSUE, A DEFENDANT WAS RELEASED

8      WITHOUT IDENTIFICATION WAS ABLE TO USE A CARD SUPPLIED BY

9      PRETRIAL SERVICES TO GO THROUGH TSA AND TO TRAVEL SUBSEQUENTLY.

10              THE COURT:  MR. LEW, YOU'RE ON YOUR FEET, SIR.

11              OFFICER LEW:  YES, YOUR HONOR.  AS I EXPLAINED TO

12     MR. RORTY THIS MORNING WHEN HE BROUGHT THIS UP, WE DO ISSUE

13     DEFENDANT I.D.'S.  THEY'RE ISSUED STRICTLY FOR THE PURPOSES OF

14     ALLOWING DEFENDANTS TO WALK INTO THE FEDERAL BUILDINGS IN OUR

15     DISTRICT.  YOU KNOW, THEY STILL HAVE TO GO THROUGH SECURITY BUT

16     MANY OF THEM WHO DON'T HAVE I.D., THIS PROVIDES THEM WITH AN

17     I.D.

18         WE DO ADVISE ALL DEFENDANTS THAT THE I.D. IS NOT INTENDED

19     TO BE USED FOR TRAVEL PURPOSES, BUT MR. RORTY ADVISED ME THAT

20     ONE OF HIS FORMER CLIENTS WAS ABLE TO USE IT TO GET THROUGH

21     TSA.  WE DO NOT ISSUE IT FOR THAT PURPOSE.

22         CERTAINLY IF IT WORKS, YOU KNOW, WE'RE FINE AND THAT HELPS

23     FACILITATE THEIR TRAVEL.  BUT WE JUST CANNOT MAKE ANY PROMISES

24     THAT TSA WILL ACCEPT IT JUST BECAUSE THE RULES ARE CONSTANTLY

25     CHANGING.

1          THE COURT:  THANK YOU, MR. LEW.

2          OFFICER LEW:  YOU'RE WELCOME.

3          THE COURT:  IT MAY BE THAT A PHONE CALL TO LOCAL

4     TSA, I ASSUME THE AIRPORT HE WOULD USE WOULD BE SAN JOSE AND I

5     WONDER IF SOME ARRANGEMENTS COULD BE MADE CALLING THEM IN

6     ADVANCE AND ALERTING THEM OF THE ISSUE SO THERE'S NOT AN ISSUE

7     AT THE GATE SUCH THAT MR. LIGHTER MISSES HIS PLANE AND HAS TO

8     WAIT AT THE AIRPORT.

9          WAS THERE SOMEONE FROM THE MARSHAL'S OFFICE?

10          MS. ANDERSON:  GOOD MORNING, YOUR HONOR.

11    MARY ANDERSON.  WE DID DO SOME PRE-INQUIRY THIS MORNING AND THE

12    FEDERAL TRAVEL, WHAT THEY ISSUE IS AN ELECTRONIC TICKET.  SO

13    THAT ALSO MEANS THAT MR. LIGHTER WILL HAVE TO GO, YOU KNOW, TO

14    THE COUNTER WITH THAT I.D.  SO I DON'T KNOW IF TSA VERBALLY,

15    YOU KNOW, WOULD PROVIDE A RESPONSE, WHETHER OR NOT THAT

16    IDENTIFICATION WOULD BE SUFFICIENT ESPECIALLY NOT KNOWING WHAT

17    IT LOOKS LIKE.

18          BUT WE ALREADY HAVE STARTED THE WHEELS KIND OF MOVING

19    ALONG.  THEY ONLY HAVE TWO FLIGHTS SO IT WILL PROBABLY BE AN

20    EARLY MORNING, BUT WE WOULD BE ABLE TO RESPOND TO THE COURT

21    PROBABLY WITHIN, YOU KNOW, A FEW HOURS BECAUSE WE DID ADVISE

22    THE COURT WOULD PROBABLY LIKE TO KNOW WHEN THE FLIGHTS WERE AND

23    DO THAT RELEASE AS CLOSE TO THE FLIGHTS AS POSSIBLE.

24          THE OTHER ISSUE IS THAT THE JAIL IS NOT GOING TO PROVIDE

25    MEDS AND ANY TYPE OF PRESCRIPTION.  SO THE LESS AMOUNT OF TIME

1   BETWEEN THE RELEASE AND THE ACTUAL FLIGHT WOULD PROBABLY BE IN

2   THE BEST INTEREST.

3          THE COURT:  THANK YOU FOR RAISING THAT POINT.

4          MS. ANDERSON:  SURE.

5          THE COURT:  AGAIN, MR. LIGHTER, I THINK YOUR CJA

6   DUTIES ARE GOING TO EXTEND THROUGH.  IF YOU CAN CONTACT THE

7   JAIL TO SEE WHAT MR. LIGHTER'S MEDICATION REGIMENT IS AND IF

8   THERE'S SOME COORDINATION ABOUT RECEIVING HIS MEDS AS CLOSE IN

9   TIME TO HIS RELEASE, THAT WOULD BE TO HIS BENEFIT, OF COURSE.

10          MR. RORTY:  I'VE MET WITH MEDICAL SOCIAL WORKERS AT

11   THE JAIL AND WHO ARE AWARE OF THE SITUATION AND HIS POTENTIAL

12   RELEASE, AND I MET WITH THEM YESTERDAY AND THEY'RE WAITING TO

13   HEAR FROM ME AS TO THE OUTCOME OF THIS HEARING AND THEY'RE

14   WILLING TO ASSIST HIM WITH SOME MEDICATION.

15      IT SOUNDS LIKE -- MAYBE MS. ANDERSON COULD HELP US.  MY

16   INCLINATION MIGHT BE ABLE TO SAY -- DOES THE COURT HAVE AN

17   AFTERNOON MONDAY CALENDAR?

18          THE COURT:  WE DO.

19          MR. RORTY:  WOULD IT BE APPROPRIATE TO PUT OR STAY

20   THE RELEASE ORDER UNTIL MONDAY AFTERNOON AND PLACE HIM ON

21   CALENDAR AND WORK TOWARDS A TUESDAY DEPARTURE?  THAT SEEMS TO

22   GIVE EVERYONE THE MAXIMUM AMOUNT OF TIME.  BUT IF THE MARSHAL'S

23   OFFICE WOULD PREFER TO DO IT SOONER, WE CAN.  IT WOULD JUST

24   SEEM TO ME THAT WOULD GIVE US ALL TIME.

25          MS. ANDERSON:  I DON'T THINK IT'S GOING TO REQUIRE

1   THAT MUCH TIME, AND I THINK THE LONGER WE PROLONG IT, IF ANY OF

2   THE COMPONENTS ARE NOT AVAILABLE, WHICH WOULD BE MYSELF,

3   EVERYTHING WOULD BASICALLY STAND DOWN.

4       SO AS LONG AS -- IF WE GET THE ORDER BY THEN AND IF YOU

5   HAVE AN ORDER THAT STAYS IT, BUT AN ORDER BASICALLY THAT WOULD

6   ALLOW ME TO OBTAIN THE TRAVEL.

7       SO IT WOULD BE AN ORDER FOR AN INDIGENT DEFENDANT TO

8   TRAVEL HAVING NOTHING TO DO WITH WHATEVER YOUR DISPOSITION IS

9   TODAY, THEN THAT WOULD ALLOW THE MARSHAL SERVICE TO AT LEAST DO

10  THE TRAVEL PORTION OF IT BECAUSE THE TRAVEL AGENCY DOES NOT --

11  HAS NO CONCERN AS TO THE DISPOSITION.

12          THE COURT:  THEY NEED AN ORDER OF RELEASE, I THINK,

13  IS WHAT I'M INFORMED.  THEY, THE TRAVEL DIVISION, NEED THE

14  COURT ORDER INDICATING OR INDICATING THAT THE COURT ORDERS THIS

15  TICKET.

16          MS. ANDERSON:  IT WOULD JUST BE A TRAVEL ORDER FOR

17  AN INDIGENT DEFENDANT.

18          THE COURT:  I SEE.

19          MS. ANDERSON:  SEPARATE FROM THE ACTUAL DISPOSITION

20  OF THE ACTUAL CASE.  YOU KNOW, USUALLY WE CAN DO IT WITHIN

21  24 HOURS AS LONG AS IT'S NOT A HOLIDAY.

22          MR. RORTY:  AND I HAVE PROVIDED THE COURT WITH TWO

23  SEPARATE ORDERS.

24          MS. ANDERSON:  YES, YES.

25          MR. RORTY:  SO WHAT I'M UNDERSTANDING IS THAT THE

1  COURT WOULD THEN SIGN THE 4248 ORDER FIRST WHICH WOULD THEN

2  GIVE THE MARSHAL SERVICE THE AUTHORITY TO OBTAIN THE TICKET,

3  AND IF THE MARSHAL SERVICE COULD THEN NOTIFY THE COURT OF A

4  TIME AND WHEN A FLIGHT IS AVAILABLE, THE COURT COULD THEN SIGN

5  THE ORDER OF RELEASE FOR THAT TIME OR CLOSE IN TIME TO THAT

6  PERIOD.

7          THE COURT:  IS THAT THE PROTOCOL?

8          MS. ANDERSON:  THAT WOULDN'T BE A PROBLEM FOR US.

9      BUT, YOU KNOW, COMBINING THE TWO WOULD MAKE IT VERY

10  DIFFICULT FOR THE MARSHAL SERVICE TO OBTAIN TRAVEL.

11         THE COURT:  OKAY.  WELL, THANK YOU VERY MUCH.

12         MS. ANDERSON:  YOU'RE WELCOME.

13         THE COURT:  THEN THAT'S WHAT THE COURT WILL DO.

14      AND, MR. RORTY, THIS ALSO MAY CALL UPON YOUR DUTIES AS

15  CJA COUNSEL AND WHAT THEY ARE AND SUBSEQUENT TO MR. LIGHTER'S

16  RELEASE, HE NEEDS TO GET TO THE AIRPORT AND HE MIGHT NEED SOME

17  ASSISTANCE NEGOTIATING THE GATE AND PICKING UP HIS TICKET AND

18  HAVING SOMEBODY THERE TO ASSIST HIM.

19         MR. RORTY:  I'LL BE GLAD TO ASSIST.

20         THE COURT:  I'M JUST MAKING THAT OPENING COMMENT AND

21  IF THAT IS A CJA FUNCTION THAT REQUIRES ADDITIONAL BILLING

22  PURPOSES, I'LL SPEAK WITH THE PERSON IN CHARGE ABOUT THAT AND

23  THEY CAN CONTACT ME.

24      MR. O'REILLY, TO YOUR POINT AND TO MS. WRONG'S POINT, YOU,

25  OF COURSE, REPRESENTED THE UNITED STATES MAGNIFICENTLY AT THE

1     TRIAL AND PUT THE GOVERNMENT'S BEST INTEREST AND THE PEOPLE'S

2     BEST INTEREST FORWARD.  AND IT WAS NOT SURPRISING THAT YOU

3     GAINED THE CONVICTION THAT YOU DID BASED ON YOUR PRESENTATION

4     OF THE EVIDENCE.

5          AND I AGREE WITH YOUR ASSESSMENT OF THE OFFENSES.  IT'S

6     VERY SERIOUS OFFENSES.  THEY'RE OFFENSES AGAINST THE VICTIM WHO

7     TESTIFIED DURING THE TRIAL ABOUT THEIR LOSSES.  SO I DO

8     RECOGNIZE THAT.

9          AND I THINK THAT WHEN WE LOOK AT THE CODES, WE LOOK AT

10    WHAT WE HAVE IN FRONT OF US AND NOTHING IS PERFECT AND NONE OF

11    US HERE, I THINK, AND I DON'T MEAN TO DISPARAGE CONGRESS, BUT I

12    THINK THERE WOULD BE A COMMON OPINION THAT CONGRESS ISN'T

13    PERFECT AND WHEN THEY PROMULGATE THE RULES THAT WE FOLLOW AND

14    THE CODE SECTIONS THAT WE FOLLOW, WE DO THE BEST THAT WE CAN.

15    AND WHEN THESE CIRCUMSTANCES COME UP THAT ARE UNIQUE AND

16    SOMETIMES IT'S A CASE OF FIRST IMPRESSION.  THIS ONE CERTAINLY

17    IS TO ME GIVEN THE CASE AND THE HISTORY AND THE MENTAL HISTORY

18    OF MR. LIGHTER.

19         SO I DO WANT TO THANK YOU ALL.  IT'S BEEN A PLEASURE

20    WORKING WITH ALL OF YOU.

21         MR. LIGHTER, GOOD LUCK TO YOU, SIR.

22         I HOPE THIS HAS BEEN, WELL, IT WOULD BE A -- I DON'T MEAN

23    TO SUGGEST THAT IT'S BEEN INSTRUCTIVE FOR YOU.  CERTAINLY IT'S

24    BEEN AN ORDEAL FOR YOU THROUGH YOUR LAWYER'S COMMENTS, BUT IT

25    IS ONE THAT THE GOVERNMENT FELT NECESSARY TO PROCEED IN, AND

1    YOU DID HAVE THE BENEFIT OF THE TRIAL, AND THE COMMUNITY SPOKE

2    AS TO THE EVIDENCE IN THE CASE.

3              MR. O'REILLY:  YOUR HONOR, AS I UNDERSTAND WHAT THE

4    COURT'S ORDER IS, ARE THERE ANY CONDITIONS OF RELEASE OR IS THE

5    CASE SIMPLY BEING ORDERED DISMISSED?

6              THE COURT:  I'M NOT ORDERING THE CASE DISMISSED.  I

7    AM ORDERING HIM RELEASED.  SO I'M NOT SETTING ASIDE A

8    CONVICTION.

9              MR. O'REILLY:  OKAY.  THANK YOU, YOUR HONOR.

10         ARE THERE ANY CONDITIONS ON WHICH HE IS BEING RELEASED?

11             THE COURT:  I DON'T THINK I HAVE JURISDICTION TO

12   IMPOSE THOSE UNDER THIS PARTICULAR SENTENCING SCHEME -- EXCUSE

13   ME, IT IS NOT A SENTENCE BUT UNDER THE RELEASE THAT I HAVE,

14   UNLIKE THE CHAUDHRY CASE WHICH I THINK WAS BROUGHT TO ALL OF

15   OUR ATTENTION, THERE WERE CERTAIN CONDITIONS THAT WERE PLACED

16   THERE.  THIS IS A DIFFERENT MATTER.  I DON'T FIND THAT I HAD

17   ANY REASON TO IMPOSE THOSE CONDITIONS.

18             MR. O'REILLY:  YOUR HONOR, I JUST WANTED

19   CLARIFICATION ON THAT.  THANK YOU VERY MUCH.

20             THE COURT:  THANK YOU.  ANYTHING FURTHER?

21             MR. RORTY:  THE ONLY QUESTION, THERE'S NOTHING FOR

22   THE COURT TO DO TODAY, BUT GIVEN THE POSTURE OF THE CASE AND MY

23   UNDERSTANDING, AND I'VE HAD SOME DISCUSSIONS WITH MS. WONG AND

24   MR. O'REILLY ABOUT THIS, IS THAT MY UNDERSTANDING IS THAT THE

25   COURT RETAINS JURISDICTION OVER THIS MATTER.

1          IT IS STILL AN EXISTING DISTRICT COURT MATTER, AND,

2     THEREFORE, SHOULD I, IN CONSULTATION WITH MR. LIGHTER AND IN MY

3     OWN RESEARCH, THINK THAT A MOTION LIES TO ADDRESS THE

4     CONVICTION, I MAY BRING THAT BEFORE THIS COURT.  THAT'S MY

5     CURRENT UNDERSTANDING, AND I JUST WANTED TO INFORM THE COURT AS

6     I MOVE FORWARD IN.

7               THE COURT:  AS I SAID, I'M NOT DISTURBING THE JURY'S

8     FINDINGS AND CONVICTIONS IN THIS CASE.  THIS IS A UNIQUE

9     SITUATION WHERE THERE HAS BEEN A CONVICTION, BUT THERE CANNOT

10    BE A SENTENCING BASED ON MR. LIGHTER'S, THE COURT'S FINDING AND

11    MEDICAL FINDINGS AND THE COURT'S ADOPTION OF THAT, THAT HE'S

12    NOT COMPETENT TO BE SENTENCED.  SO THAT PUTS US IN A VERY

13    UNIQUE SITUATION.

14        ALL RIGHT.

15              MR. RORTY:  THANK YOU VERY MUCH.

16              THE COURT:  THANK YOU VERY MUCH.

17        (COURT CONCLUDED AT 11:10 A.M.)

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    IRENE RODRIGUEZ, CSR, RMR, CRR
17  CERTIFICATE NUMBER 8074

18

19               DATED:  JANUARY 19, 2016

20

21

22

23

24

25